# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF MICHIGAN

ERIC HERRON,

    Plaintiff,

vs.      No.

UNKNOWN FOUNTAIN, MICHAEL SCHAFER, T. STEPHENSON, RANDEE REWERTS, and RICHARD RUSSELL, in their individual and official capacities.      Hon.

    Defendants.

_____/

## COMPLAINT AND JURY DEMAND

1. Incarcerated persons have a lot of time on their hands.

2. The Michigan Department of Corrections ("MDOC") prefers that incarcerated persons use their free time for productive activities that do not pose threats to the safety or security of the facilities.

3. One productive activity that incarcerated persons are permitted to engage in is reading books and learning new languages.

4. This is especially important for those trying to learn an ancestral language to immerse themselves in the culture of their ancestors and speak with family members and loved ones.

1

## PARTIES

1. Plaintiff Eric Herron has, at all times relevant to the allegations in this complaint been a person incarcerated at the Carson City Correctional Facility ("DRF").

2. Defendant Unknown Fountain was, at all times relevant to the allegations in this complaint, employed by the MDOC at DRF in the mailroom.

3. Defendant Michael Schafer was, at all times relevant to the allegations in this complaint, an MDOC prison counselor employed at DRF.

4. Defendant T. Stephenson was, at all times relevant to the allegations in this complaint, a Resident Unit Manager at DRF.

5. Defendant Randee Rewerts was, at all times relevant to the allegations in this complaint, the warden at DRF.

6. Defendant Richard Russell was, at all times relevant to the allegations in this complaint, the manager of the Grievance Section in the MDOC Office of Legal Affairs.

## JURISDICTION AND VENUE

7. No Defendant is sued in their official capacity for monetary relief and therefore, the Eleventh Amendment does not present a bar to this Court's jurisdiction.

8. This Court has jurisdiction pursuant to 28 U.S.C. § 1331 because Plaintiff's claims arise under 42 U.S.C. § 1983, the First Amendment to the United States Constitution, and the Fourteenth Amendment to the United States Constitution.

9. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because the majority of the events relevant to this Complaint occurred at DRF which is situated in the Western District of Michigan.

## FACTUAL ALLEGATIONS

10. MDOC Policy Directive P.D. 05.03.118 ¶ NN(18) generally prohibits incarcerated persons from receiving "[m]ail written in code, or in a foreign language which cannot be screened by institutional staff to the extent necessary to conduct an effective search." **Exhibit 1, P.D. 05.03.118**.

11. On December 1, 2022, MDOC Director Heidi Washington issued Director's Office Memorandum 2023 – 18 (effective Jan. 1, 2023), which provides:

    Paragraph NN, #18, prohibits Mail written in code, or in a foreign language which cannot be screened by institutional staff to the extent necessary to conduct an effective search. This DOM revises Paragraph NN, #18, to permit prisoners to receive and possess dictionaries and grammar/phrase books written in either a foreign language, American Sign Language (ASL), or braille.

    **Exhibit 2, DOM 2023 – 18**.

12. On February 16, 2023, Defendant Fountain reviewed a package mailed by Amazon to DRF for Mr. Herron.

3

13. Amazon is an "approved vendor" pursuant to P.D. 05.03.118, Attachment A.

14. Defendant Fountain permitted Mr. Herron to receive one of the books in the package but rejected another book, SPANISH FOR DUMMIES.

15. Defendant Fountain predicated her rejection of SPANISH FOR DUMMIES because "Prisoners are prohibited from receiving mail that may pose a threat to the security, good order, or discipline of the facility, facilitate or encourage criminal activity, or interfere with the rehabilitation of the prisoner." **Exhibit 3, Mail Rejection Form**.

16. Mr. Herron requested an administrative hearing on the rejection.

17. On February 21, 2023, Defendant Schafer conducted what passes for an administrative hearing consistent with the Fourteenth Amendment's Due Process Clause at DRF.

18. Mr. Herron's book, SPANISH FOR DUMMIES, was not available at the hearing for Defendant Schafer to review.

19. There was no legitimate penological reason to not have the book present at the administrative hearing for Mr. Schafer to review.

20. Upon information and belief, Mr. Herron is not capable of learning Spanish through a process of osmosis by simply being in the same room as the book.

21. The Administrative Hearing Report produced by Defendant Schafer indicates that Mr. Herron told Defendant Schafer "I can have it, Policy state I can!" **Exhibit 4, Administrative Hearing Report**.

22. Mr. Herron was correct.

23. Unfortunately, either Defendant Schafer did not understand the language of DOM 2023 – 18 or he did not care.

24. Alternatively, Defendant Schafer simply did not know what he was affirming the rejection of because he had never seen it.

25. Defendant Schafer affirmed Defendant Fountain's rejection of Mr. Herron's book, writing:

> The item was not available at the hearing. PD 05.03.118 was Updated on 1/1/2023 by means of Directors Office Memorandum. NN #18 Prohibits Mail writted [sic.] in code, or in a foreign language which cannot be screened by Institutional staff to the extent necessary to conduct an effective search. It permits prisoners to receive and possess DICTIONARIES and GRAMMAR/PHRASE BOOKS written in either a foreign language, American Sign Language (ASL), or Braille. No where in Policy or in the updated DOM does it state that Prisoners are allowed to possess Books on "How to Learn a NEW/DIFFERENT LANGUAGE.' Book is DENIED PER Policy PPD 05.03.118

**Exhibit 4, Administrative Hearing Report**.

26. The back cover of SPANISH FOR DUMMIES describes the contents of the book as:

> Open the book and find:
> - Basic grammar and common expressions

5

- Sentence structure and verb conjugations
- Formal and informal greetings
- Information on numbers, time, and measurements
- Pointers for describing everyday activities
- Tips for making small talk, asking for directions, and more
- Fun activities to help you practice your Spanish skills
- Spanish-English and English-Spanish dictionaries

**Exhibit 5, SPANISH FOR DUMMIES, Cover**.

27. Merriam-Webster defines "phrase book" as "a book containing idiomatic expressions of a foreign language and their translation."[1]

28. Dictionary.com defines "phrase book" as "a small book containing everyday phrases and sentences and their equivalents in a foreign language, written especially for travelers."[2]

29. Merriam-Webster defines "grammar" as "the study of the classes of words, their inflections, and their functions and relations in the sentence."[3]

30. Dictionary.com defines "grammar" as "the study of the way the sentences of a language are constructed; morphology and syntax."[4]

---

[1] *Phrase Book*, MERRIAM-WEBSTER, https://www.merriam-webster.com/dictionary/phrase%20book?utm_campaign=sd&utm_medium=serp&utm_source=jsonld (last visited July 18, 2023).

[2] *Phrase Book*, DICTIONARY.COM, https://www.dictionary.com/browse/phrase-book (last visited July 18, 2023).

[3] *Grammar*, MERRIAM-WEBSTER, https://www.merriam-webster.com/dictionary/grammar (last visited July 18, 2023).

[4] *Grammar*, DICTIONARY.COM, https://www.dictionary.com/browse/grammar (last visited July 18, 2023).

31. SPANISH FOR DUMMIES is exactly the type of book Mr. Herron is permitted to purchase and possess pursuant to DOM 2022 – 18.

32. The MDOC has made its determination that, absent other security concerns, foreign language dictionaries and grammar/phrase books do not pose a threat to the safety and security of the prisons.

33. Despite this determination, Defendants Fountain and Schafer sought to impose their personal and subjective determinations on what information Mr. Herron was entitled to receive.

34. By willfully violating controlling MDOC policy, Defendants Schafer and Fountain violated MCL § 750.478, highlighting the egregiousness of their conduct.

35. Mr. Herron wishes to learn Spanish for several reasons:

    a. Mr. Herron is Filipino and Spanish is his family's historical native language;

    b. Mr. Herron's girlfriend speaks Spanish; and

    c. If the MDOC lacks personnel who speak Spanish – as their rejection implies – Mr. Herron also needs to be able to speak Spanish in the event that other Spanish speaking prisoners are discussing illegal, dangerous, or otherwise inappropriate material so he can protect himself because

7

the MDOC apparently lacks personnel who speak the second most common language in the United States.

36. Other persons incarcerated at DRF have obtained a copy of SPANISH FOR DUMMIES, through the mail without having it rejected. **Exhibit 6, Affidavit of Fred Proctor**.

37. As a result of Defendants' improper rejection of SPANISH FOR DUMMIES, Mr. Herron has been unable to learn Spanish, the language of his ancestors.

38. Mr. Herron has also suffered injury in the form of violations of his First, Eighth, and Fourteenth Amendment rights.

## COUNT I: 42 U.S.C. § 1983 – First Amendment

39. Plaintiff realleges and reincorporates the preceding paragraphs as if fully restated herein.

40. "[P]rison inmates retain all First Amendment rights not incompatible with their status as prisoners 'or with the legitimate penological objectives of the corrections system.'" *Jones v. Caruso*, 569 F.3d 258, 267 (6th Cir. 2009) *quoting Pell v. Procunier*, 417 U.S. 817, 832 (1974).

41. Claims that a regulation bears a rational relationship to a legitimate penological interest "cannot be sustained where the logical connection between the regulation and the asserted goal is so remote as to render the policy arbitrary or irrational." *Turner v. Safley*, 482 U.S. 78, 89–90 (1987).

8

42. There is no legitimate penological basis for prohibiting incarcerated persons from learning Spanish which is the second most common language spoken in Michigan households. *Selected Characteristics in the United States*, UNITED STATES CENSUS BUREAU, https://data.census.gov/table?q=DP02&g=040XX00US26 (last accessed July 18, 2023).

43. There is no legitimate penological basis for preventing an individual learning the language of his ancestors when that language is the second most spoken language in Michigan.

44. The MDOC itself has already determined that incarcerated persons are entitled to obtain foreign language dictionaries and grammar/phrase books.

45. Defendants imposed their personal opinions by rejecting Mr. Herron's copy of SPANISH FOR DUMMIES.

**COUNT II: 42 U.S.C. § 1983 – Fourteenth Amendment – Due Process Clause**

46. Plaintiff incorporates the preceding paragraphs as if fully restated herein.

47. In the context of the rejection of an incarcerated person's mail, due process requires that:

   a. The prisoner is given notice of the mail rejection;

   b. The sender of the mail must be given notice of the mail rejection; and

    c. There must be an appeal process "to an impartial third party prior to the letter being returned."

    *Martin v. Kelly*, 802 F.2d 236, 243–244 (6th Cir. 1986) *followed by ACLU Fund of Mich. v. Livingston Cnty.*, 796 F.3d 636, 648 (6th Cir. 2015).

48. Mr. Herron was provided with notice of the rejection of his mail.

49. However, Mr. Herron was denied anything that can remotely be described as "an impartial third party."

50. Mr. Herron availed himself of the appeal provided for in the MDOC policy, filing a grievance.

51. Defendant Schafer noted that mail in a foreign language that prevented staff from screening it was subject to rejection under P.D. 05.03.118 ¶NN(18).

52. Defendant Schafer rendered this decision without seeing the book.

53. Defendant Schafer also failed to explain how a book that includes the English translation for all Spanish phrases and words within it was impervious to attempts to screen it.

54. Defendant Schafer then rejected the book because while Mr. Herron was permitted to have foreign language dictionaries and/or foreign language grammar and phrase books, he was not permitted to have a book that was both a dictionary *and* grammar and phrase book.

55. When Mr. Herron filed his grievance – his appeal to an "impartial third party – it was denied by Defendant Stephenson because it "clearly teaches a foreign language . . ."

56. Neither Michigan nor the United States has an official language – meaning that Defendant Stephenson fabricated this justification.

57. Defendants Rewerts and Russell violated Mr. Herron's due process rights by failing to impartially review his Step II grievance.

58. Specifically, Defendant Rewerts and Russell did not review the book in question or applicable policies and choose to simply adopt the language of the Step I grievance denial or simply rubber stamp the denial below.

**COUNT III: 42 U.S.C. § 1983 – Fourteenth Amendment – Void for Vagueness**

59. Plaintiff incorporates the preceding paragraphs as if fully restated herein.

60. The void for vagueness doctrine encompasses two related concepts.

    a. First, ordinary people must know what the law requires of them.

    b. Second, the law must give sufficient guidance to those enforcing it to avoid arbitrary enforcement.

61. It is obvious that the MDOC's mail policy is subject to wildly different interpretations by different prison officials.

62. For example, Mr. Herron was not able to get SPANISH FOR DUMMIES – despite it being the type of book described in the MDOC Memorandum. **Exhibit 2, DOM 2023 – 18**.

63. Furthermore, prison officials within DRF are incapable of consistently implementing the exact same rule, as applied to the exact same book. **Exhibit 6, Affidavit of Fred Proctor**.

64. Defendants also appear to not understand the meaning of certain words and/or phrases within P.D. 05.03.118, including, but not limited to:

    a. "cannot be screened by facility staff . . ." **Exhibit 1, P.D. 05.03.118, ¶NN(18)**.

    b. "dictionaries and grammar/phrase books . . ." **Exhibit 2, DOM 2023 – 18**.

65. Either MDOC mail policy is incapable of consistent application *or* MDOC employees are making decisions based solely on their individual prejudices and beliefs without any oversight.

66. Mr. Herron is at risk of losing more property purchased by him, or on his behalf, due to the inconsistent and inexplicable mail rejection policy.

67. Mr. Herron could also be issued a misconduct for attempting to bring "contraband" into the facility because of the inconsistent applications of the

mail rejection policy. A misconduct could subject Mr. Herron to lost and/or restricted privileges including communication via mail and/or JPay.

## COUNT IV: Eighth Amendment – Deliberate Indifference to Risk of Serious Harm

68. Plaintiff incorporates the preceding paragraphs as if fully restated herein.

69. The Eighth Amendment to the United States' Constitution imposes an affirmative duty to protect incarcerated persons on corrections officers, correctional facilities, and corrections agencies.

70. Defendant Fountain's rejection of SPANISH FOR DUMMIES was predicated on the risk to the safety and security of the facility because it could be "used to communicate in a language that is not used by staff!" **Exhibit 3, Mail Rejection Form** (capitalization of all letters omitted).

71. According to Defendant Fountain, staff at DRF do not speak Spanish.

72. Some prisoners incarcerated at DRF, other than Mr. Herron, *do* speak Spanish.

73. By failing to ensure that some staff speak Spanish and refusing to permit Mr. Herron to learn Spanish, Defendants are ensuring that no one would be able to understand and prevent attacks on Mr. Herron or other persons if they are planned in Spanish.

74. Defendants are clearly aware of this risk as preventing Mr. Herron from learning Spanish was justified by the potential risk to the security of the facility.

13

75. Defendants are ignoring this risk by failing to have any staff, or sufficient staff, who speak Spanish at DRF.

76. Defendants affirmatively exacerbate the risk created by their failure to staff the facility with persons who speak Spanish by preventing Mr. Herron from learning Spanish.

WHEREFORE, Plaintiff respectfully requests that this Court adjudge and declare that Defendants violated his rights in the manner set forth above and award him:

a. Nominal, compensatory, and punitive damages;

b. An injunction requiring the MDOC to provide an mechanism for incarcerated persons to appeal mail rejections to impartial third parties;

c. An injunction requiring the MDOC to ensure that the impartial third parties have access to the materials in question and review them before making their decision;

d. An injunction requiring the MDOC to include a "definitions" section in P.D. 05.03.118 to define all the words that Defendants incorrectly interpreted;

e. A declaratory judgment that the MDOC's grievance process is unavailable after Step I within the context of constitutionally required appeals from mail rejections;

f. Any other relief this Court deems just and proper.

|  |  |
|---|---|
| Date: April 30, 2024 | Respectfully Submitted,<br><br>/s/ Paul Matouka<br>Paul Matouka (P84874)<br>Oliver Bell Group<br>50 W. Big Beaver Rd.<br>Suite 200<br>Troy, MI 48084<br>T: (248) 327-6556<br>E: notifications@oliverlawgroup.com<br>*Attorneys for Plaintiff* |